UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————————————

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND, ANNUITY
FUND, AND APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, ET AL.,

                            Petitioners,

               - against -

DP CIVIL, INC.,

                         Respondent.
—————————————————————————————————

25-cv-8564 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds"), Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"), and Carpenter Contractor Alliance of Metropolitan New York ("CCA," and together with ERISA Funds and the Charity Fund, the "petitioners" or the "Funds"), have filed a petition to confirm an arbitration award (the "Petition") pursuant to section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. See Petition to Confirm Arbitration ("Pet."), ECF No. 1. The respondent, DP Civil Inc., has not opposed the Petition. For the reasons explained below, the Petition is **granted**.

## I.

The following uncontested facts are taken from the Petition and evidence submitted in support thereof.[1]

The ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Pet. ¶ 4. The Charity Funds are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Id. ¶ 5. CCA is a New York not-for-profit corporation. Id. ¶ 6. The respondent, DP Civil Inc., is a domestic business corporation incorporated under the laws of New York. Id. ¶ 7. At all relevant times, the respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Id.

In November 2021, the respondent and the New York City District Council of Carpenters (the "Union") executed an Independent Heavy Construction Dockbuilding Marine and Foundation Agreement covering the period from July 1, 2011

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

through May 31, 2017 (the "2011-2017 CBA"). Ex. A to Pet., ECF No. 1-1. On or around the same time, the respondent executed an Extension and Compliance Agreement with the Union covering the period from June 1, 2021, through May 31, 2027 (the "CBA"). Exs. A & B to Pet., ECF Nos. 1-1 & 1-2. The CBA requires the respondent to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. See Ex. B to Pet., art. XII § 1. The CBA also requires the respondent to "make available records consisting of wage payments and contributions to the Fringe Benefit Funds" within seven days of receiving a written request for audit. See id. art. XII § 9.

In June 2025, the petitioners initiated arbitration proceedings against the respondent and sent notice to the respondent. See Pet. ¶ 24; see also Ex. I to Pet., ECF No. 1-9. The alleged failures giving rise to the arbitration proceeding included: failing to cooperate with the petitioners' requested audit, refusing to submit to that audit, and consequently being delinquent in remitting fringe benefits to the Funds. Id. ¶¶ 21-23.

A hearing was held on July 28, 2025, and Arbitrator J.J. Pierson rendered a final award, in writing, dated July 29, 2025. Id. ¶ 25. No one appeared on behalf of the respondent despite the arbitrator's finding that the respondent had sufficient

legal notice of the proceeding and evidence to support the claims submitted by the Funds. Ex. J to Pet. 2, ECF No. 1-10. The arbitrator found that the respondent was "deficient and delinquent in remitting fringe benefit contributions to the Funds" and had "violated its obligation under the CBA to remit accurate and timely contributions due the funds." Id. Consequently, the arbitrator ordered the respondent to pay the Funds the sum of $605,862.67, consisting of: (1) the estimated principal deficiency of $457,081.76; (2) interest of $54,464.56; (3) liquidated damages of $91,416.35; (4) attorneys' fees of $1,500; (5) arbitration costs of $1,000; and (6) court costs of $400. See id. at 3. The arbitrator also ordered the respondent to comply with the Funds' audit request and produce its books and records within thirty days of the final award. Id. On August 5, 2025, the respondent was served by certified and electronic mail with a demand for payment and compliance with the final award. See Ex. K to Pet., ECF No. 1-11. The petitioners allege that, at the time the Petition was filed, the respondent had not paid any portion of the final award nor produced the required books and records in compliance with the final award. Pet. ¶ 30.

On October 16, 2025, the petitioners filed the Petition seeking confirmation of the final award. After the respondent's original time to respond to the Petition lapsed, the Court sua

sponte extended the time to respond. See ECF Nos. 9, 11. The Court stated that if the respondent did not respond by December 15, 2025, the Petition would be deemed unopposed. ECF. No. 11. The respondent has not responded. Therefore, the petition will be treated as unopposed.

In addition to seeking confirmation of the final award, the petitioners seek an order requiring the respondent to make its books and records available to the petitioners. Pet. 9. The petitioners also seek attorneys' fees and costs, pre-judgment interest, and post-judgment interest. Id.

## II.

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1988). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Accordingly, an arbitration award is to be confirmed if there is even a "barely

colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

Although the respondent has failed to respond to the Petition, the Court must do more than simply issue a default judgment in favor of the petitioners. The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record," and "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**III.**

In this case, the arbitrator's award was not the arbitrator's "own brand of industrial justice." See United Paperworkers Int'l Union, AFL-CIO, 484 U.S. at 36. The arbitrator reviewed the "convincing and credible evidence" and determined that the respondent was "obligated, but delinquent, in remitting fringe benefit contributions to the Funds," and consequently, violated the CBA and is liable to the Funds in the amount of $605,862.67.  Ex. J to Pet. 3. The record submitted with the Petition includes the CBA, evidence of the violation, and an accounting of the unpaid contributions to the Funds. Exs. B, H, I to Pet. The record supports the arbitrator's decision, and there is no genuine dispute of any material fact. The arbitrator's decision should therefore be confirmed.

**IV.**

The petitioners also seek to recover pre-judgment interest, attorneys' fees and costs, and post-judgment interest.

**A.**

The Second Circuit Court of Appeals has observed that in the context of petitions to confirm arbitration awards, there is a "presumption in favor of pre-judgment interest." Waterside Ocean Navigation Co. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, courts in this District "have exercised their discretion to award prejudgment interest when

confirming arbitration awards under collective bargaining agreements pursuant to [section] 301 of the LMRA," when the collective bargaining agreement indicates that the arbitration award is final and binding. Service Emps. Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). The "common practice among courts within this Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." Id. (citing N.Y. C.P.L.R. §§ 5001-04). However, parties may contract around the statutory rate for pre-judgment interest. See KLS Diversified Master Fund, L.P. v. McDevitt, 532 F. Supp. 3d 126, 138 (S.D.N.Y. 2021), aff'd, No. 21-1263, 2022 WL 2759055 (2d Cir. 2022).

In this case, the CBA provides for pre-judgment interest on unpaid contributions "determined at the prime rate of Citibank plus 2%." Ex. B to Pet., art. VII § 8(f); see also Pet. ¶ 19. The petitioners are therefore entitled to pre-judgment interest at a rate of 9.5% running from July 29, 2025, to the date of entry of judgment.[2]

---

[2] The arbitrator awarded pre-judgment interest at a rate of 10.5% but did not explain the calculation of this rate. See Ex. J to Pet. On July 29, 2025, the date of the final award, the prime rate was 7.5%. Therefore, petitioners are entitled to collect pre-judgment interest at a rate of 9.5%.

**B.**

The petitioners request attorneys' fees in the amount of $1,040 and costs incurred in prosecuting this action, including $79.50 in service fees and $5 in court costs. Pet. ¶¶ 40, 41. "[N]either Section 301 of the LMRA nor the Federal Arbitration Act provides for attorney's fees in actions to confirm an arbitration award." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Systems, Inc., No. 12-cv-005, 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012); see also Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). However, courts may exercise their "inherent equitable powers to award attorney's fees when opposing counsel acts in bad faith," and, in arbitration award confirmation proceedings, courts have awarded fees "when a challenger refuses to abide by an arbitrator's decision without justification." Dejil Systems, 2012 WL 3744802, at *4; accord Int'l Chem. Workers, 774 F.2d at 47.

Courts in this District "have routinely awarded [attorneys] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-cv-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013); Abondolo v. H & M.S. Meat Corp., No. 07-cv-3870, 2008 WL 2047612, at *4

(S.D.N.Y. May 12, 2008). Moreover, under the CBA and the collection policy, the petitioners' attorneys' fees are recoverable. See Ex. B to Pet., art. XII §§ 8(f), 8(d), 8(g); Ex. G to Pet., §§ IV(11), V(6), ECF No. 1-7.

The respondent has failed to comply with the CBA, both in not making the required payments to the Funds and by not participating in the arbitration. To date, the respondent has continued to ignore its obligations by refusing to abide by the terms of the final award and by failing to respond to the Petition. Thus, there is sufficient justification to award the petitioners their attorneys' fees and costs incurred in connection with this action.

To support their request for attorneys' fees, the petitioners submitted invoices that documented the specific tasks performed, the hours worked, and the hourly billing rates for the attorneys who worked on this matter. See Ex. L to Pet. ECF No. 1-12.  The requested attorneys' fees represent 3.2 hours of work performed on this matter by two associates,[3] billed at $325 per hour. In line with the most recent approach of courts in this District in addressing similar confirmation petitions, the slightly lower rate of $300 per hour for associate work is

---

[3] The Petition includes a billing rate of $430 per hour for one partner, Maura Moosnick, in connection with this matter, Pet. ¶ 36, but the invoice submitted by the petitioners only reflects work performed by associates, see Ex. L to Pet.

reasonable. See e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Budd Woodwork Inc., No. 24-cv-8560, 2025 WL 934360, at *5 (S.D.N.Y. Mar. 27, 2025) (collecting cases).

Court costs for service and other fees are routinely permitted, see N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (collecting cases), and the costs sought by the petitioners in this case are reasonable.

Accordingly, the petitioners are entitled to $960 in attorneys' fees and $84.50 in costs.

### C.

The petitioners are also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citing 28 U.S.C. § 1961(a))). Post-judgment interest on the entire amount of the judgment will accrue from the date of the judgment at the rate provided by 28 U.S.C. § 1961(a).

### D.

Finally, in accordance with the final award, the respondent is ordered to produce, within 30 days of entry of judgment, any

and all books and records necessary to conduct an audit for the period of March 1, 2023, through the present.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are moot or without merit. For the foregoing reasons, the petition to enforce the arbitration award is **granted.** The Clerk is directed to enter judgment as follows:

1) In the amount of $605,862.67, plus pre-judgment interest thereon from July 29, 2025, at an annual rate of 9.5%.

2) $960 in attorneys' fees and $84.50 in costs related to this action.

3) Post-judgment interest on the entire amount of the judgment, which shall accrue at the statutory rate. See 28 U.S.C. § 1961 (a).

4) Ordering the respondent to produce, within thirty days, any and all books and records necessary to conduct an audit for the period of March 1, 2023, through the present.

When judgment is entered, the Clerk is respectfully requested to close this Case.

SO ORDERED.
Dated:     New York, New York
           April 1, 2026

_____
John G. Koeltl
United States District Judge

12